IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CEMEX, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 02: 02cv1240 |
| ) | |
| INDUSTRIAL CONTRACTING AND ) | |
| ERECTING, INC., ) | |
| ) | |
| Defendant/ Third Party ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MINSERCO, INC., ) | |
| ) | |
| Third Party Defendant. ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

June 26, 2006

Presently pending before the Court for disposition is the SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Defendant Industrial Contracting and Erecting, Inc. ("ICE") and the brief in opposition filed by Plaintiff, Cemex, Inc. ("Cemex"). After consideration of the filings of the parties, arguments of counsel, and the applicable case law, the Supplemental Motion for Summary Judgment will be granted.

### BACKGROUND

This is the second of two lawsuits which arose from a work place accident which occurred on September 24, 1999, when a dragline shovel[1] in which David J. Carcaise ("Carcaise") was working fell over and down a 70' embankment. Both the dragline and the

---

[1] Specifically, the dragline shovel was a Marion model 7820 walking dragline.

quarry where Carcaise was working were owned by Cemex.[2]  At the time of the accident, Carcaise was an employee of Minserco, Inc. ("Minserco"), the contractor hired to operate the dragline.  As a result of the accident, Carcaise sustained catastrophic personal injuries and the damage to the dragline was severe.  Cemex also allegedly incurred increased costs because it operated an older, less efficient dragline during the period of repair.

As a result of the accident, David Carcaise and his wife, Leslie, filed a lawsuit for personal injuries and loss of consortium on May 15, 2001.  Approximately a month later, on or about June 21, 2001, Cemex filed the instant action  against ICE for property damages arising out of the dragline accident.

A.	*Carcaise v. Cemex v. ICE  (Civil Action No. 01-0859)*

As stated *supra*, on May 15, 2001, David J. Carcaise and his wife, Leslie J. Carcaise (collectively referred to as "the Carcaises") filed a Complaint in this Court against Cemex for personal injuries and loss of consortium which resulted from the September 24, 1999 accident.  Plaintiffs alleged that the accident happened due to unstable ground conditions and/or inadequate ballasting of the dragline.

On July 13, 2001, Cemex filed an Answer in which it denied liability and asserted that the condition of the dragline was the responsibility of a party other than Cemex.  On September 24, 2001, Cemex filed a Third Party Complaint against ICE, in which it alleged that

---

[2]	In 1999, the Wampum quarry was owned and operated by Southdown, which was subsequently acquired by Cemex.  Southdown was the successor company to Medusa Corporation.  For convenience, all three entities are referred to herein as "Cemex."

ICE was responsible for the accident because of its breach and/or negligent performance of a 1993 Construction Contract between ICE and Cemex's predecessor Medusa Corporation relative to the disassembly and re-erection of the subject dragline. In accordance with the Construction Contract, ICE disassembled, transported, and reassembled the dragline from its then location in Kentucky to the Wampum, Pennsylvania quarry. Distilled to its essence, Cemex alleged that ICE failed to install a sufficient quantity of ballast in the dragline at the time of reassembly in Pennsylvania in accordance with the manufacturer's specifications and that said failure was a proximate cause of the accident. Third Party Complaint, at ¶¶ 22-23.

A jury trial commenced in the matter on October 26, 2004, and concluded with a verdict in favor of the Carcaises on November 9, 2004. Specifically, the jury found in favor of David S. Carcaise in the amount of $6,400,000.00 and in favor of Leslie J. Carcaise, his wife, in the amount of $500,000.00. The jury also determined that Cemex was 70% causally negligent, that ICE was 20% causally negligent, and that Plaintiff, David S. Carcaise, was 10% causally negligent.

On November 10, 2004, the Court molded the jury verdict and entered judgment in favor of David S. Carcaise in the amount of $5,760,000.00 plus costs, with Cemex being liable for $4,480,000 of that amount and ICE being liable for $1,280,000.00 of that amount. The Court also molded the jury verdict in favor of Leslie J. Carcaise and entered judgment in the amount of $450,000.00 plus costs, with Cemex being liable for $350,000.00 of that amount and ICE being liable for $100,000 of that amount.

On May 16, 2005, the Court entered an Amended Judgment in favor of the Carcaises in which Cemex and ICE were found to be joint tortfeasors. Cemex and ICE have both taken appeals, which are pending before the United States Court of Appeals for the Third Circuit.

B.      *Cemex v. ICE v. Minserco, Inc. (Civil Action No. 02-1240)*

On September 21, 2001, the same day Cemex moved in the Carcaise action to join ICE as a  third-party defendant, Cemex requested the Prothonotary of the Court of Common Pleas of Lawrence County, Pennsylvania to issue a Writ of Summons upon ICE. Nine months later, on June 21, 2002, Cemex filed a Complaint for property damages against ICE in the Court of Common Pleas of Lawrence County, Pennsylvania. Shortly thereafter, ICE removed the case to this Court. *See* Notice of Removal.

In the "removed action," Cemex asserts claims against ICE based on the same "incident" in which Mr. Carcaise was injured, i.e., when "the dragline slid down" the seventy-foot embankment. See Complaint at ¶ 10. Cemex alleges that ICE breached its 1993 Contract by allegedly failing to properly disassemble, assemble, transport, and erect the dragline. Specifically, Cemex alleged that ICE failed to place sufficient ballast in the dragline at the time of reassembly in accordance with the manufacturer's specifications, and that said failure was a substantial factor in bringing about the incident. (Complaint at ¶¶ 12, 15, and 25.)

On July 19, 2002, ICE filed a Third-Party Complaint against Minserco, alleging, *inter alia,* that its negligent operation of the dragline pursuant to a Stripping Contract with Cemex was the sole cause of the dragline accident.

ICE has filed the instant motion in which it seeks to have all claims against it dismissed based on the doctrines of collateral estoppel and/or res judicata.  In the alternative, ICE seeks to have Count I of the Complaint stricken based on the doctrines of Economic Loss and/or Gist of the Action.[3]

### STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).  The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion.  *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249).  Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  *Id*. (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

---

[3] Because the Court has found that the doctrines of collateral estoppel and/or res judicata should apply, it is not necessary for the Court to rule on ICE's alternative grounds for summary judgment which are only applicable to Cemex's tort cause of action.

## DISCUSSION

A.     *Doctrine of Collateral Estoppel*

Defendant ICE argues that "[t]he issue decided in Carcaise is identical with the one presented in the case at bar. In *Carcaise*, the parties necessarily litigated the cause of the subject accident, and more specifically the sufficiency of ballast inserted by ICE into the dragline. . . . The issue in the present case - the cause of the dragline accident - is identical." Br. at 6. Therefore, according to ICE, Cemex's claims are barred by the doctrine of collateral estoppel.

Under collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Traditionally, under Pennsylvania law,[4] four factors must be present before the application of collateral estoppel is appropriate: (i) the issue decided in the prior adjudication must be identical to the one presented in the later action; (ii) there must have been a final judgment on the merits; (iii) the party against whom collateral estoppel is asserted must have been a party or in privity with a party to the prior adjudication; and (iv) the party against whom collateral estoppel is asserted

---

[4] Due to considerations of *Erie Railroad v. Tompkins,* 304 U.S. 64 (1938), a federal court sitting in diversity should not apply the federal law of collateral estoppel unless a substantial federal interest is found to exist. *See Williams v. Ocean Transport Lines, Inc.*, 425 F.2d 1183, 1189-90 (3d Cir. 1970). If no federal interest exists, the court should look to the rules of collateral estoppel of the state that governs the second suit. *See Connelly v. Wolf, Block, Schorr and Solis-Cohen*, 463 F. Supp. 914, 917 (E.D. Pa. 1978). The Court finds that no federal interest is involved in this case and, therefore, the federal law of collateral estoppel does not apply. Accordingly, the Court will look to the law of Pennsylvania, the law governing both the *Carcaise* lawsuit and the instant lawsuit, to determine this matter.

must have had a full and fair opportunity to litigate the issue in question in a prior action. *Tucker v. Philadelphia Daily News*, 848 A.2d 113, 120 (Pa. 2004).

In this case, the Court finds and rules that all four prerequisites for collateral estoppel have been met.

### 1. The Issue Decided in the Prior Adjudication Was Identical to the One Presented in the Later Action

Despite Cemex's argument to the contrary, the Court finds that the issue decided in *Carcaise* is identical to the one presented in the instant matter. For example, in its Third-Party Complaint against ICE, Cemex alleged that any injuries sustained by Mr. Carcaise were caused by ICE's negligent performance of the 1993 Contract and specifically, ICE's failure to properly ballast the dragline.

In its instant Complaint, Cemex again alleges that ICE was negligent in failing to "properly ballast the dragline" and breached its contract with Cemex by failing to equip the dragline with sufficient ballast for safe operation. Complaint, ¶¶ 18 and 25. Moreover, Cemex specifically states that it filed the instant suit "[a]s a result of ICE's conduct (*i.e.* the failure to install the appropriate amount of ballast into the dragline.)" Cemex Br. at 4.

For these reasons, the Court finds and rules that the issue decided in *Carcaise* is identical to the issue presented in the case *sub judice* and, thus, the first prerequisite for collateral estoppel has been met.

    2.    <u>There Was a Final Judgment on the Merits</u>

Under Pennsylvania law, "a judgment is deemed final for purposes of *res judicata* or collateral estoppel unless or until it is reversed on appeal." *Shaffer v. Smith*, 673 A.2d 872, 875 (Pa. 1994). The Pennsylvania Supreme Court has held that this proposition is consistent with Section 13 of the Restatement (Second) of Judgments, which provides:

> The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion (as distinguished from merger and bar), "final judgment" includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.

Restatement (Second) of Judgments § 13. Moreover, comment (f) to section 13 provides that "[t]he better view is that a judgment otherwise final remains so despite the taking of an appeal . . . ."

An Amended Judgment was entered in the *Carcaise* action on May 16, 2005. Both Cemex and ICE filed timely appeals of that Amended Judgment to the United States Court of Appeals for the Third Circuit. However, despite being on appeal, that Amended Judgment is final "unless or until it is reversed on appeal." *Shaffer,* 673 A.2d at 875. Accordingly, the Court finds that the second prerequisite for collateral estoppel has been met.

    3.    <u>The Party Against Whom Collateral Estoppel Is Asserted Must Have Been A Party Or In Privity With A Party To The Prior Adjudication</u>

In the *Carcaise* action, Cemex was the named original defendant. In the instant case, Cemex contends that "although Cemex is the nominal plaintiff, this claim is primarily a subrogation claim on behalf of Cemex's property insurer" and, therefore, collateral estoppel can not be properly asserted. Cemex Br. at 2. The Court is not persuaded by this argument.

Cemex is a named party in both lawsuits, both of which assert that ICE breached its 1993 Contract by allegedly failing to properly disassemble, assemble, transport, and erect the dragline, and both lawsuits assert the "same facts"- that the accident happened due to inadequate ballasting of the dragline.

Furthermore, our appellate court has held that an insurer is in privity with its insured and that the insurer is bound by the outcome of a proceeding defended by the insured. *See U.S. Steel Corp. Plan for Employee Ins. Ben. v. Musisko,* 885 F.2d 1170, 1179 (3d Cir. 1989); *see also Stidham v. Millvale Sportmen's Club*, 618 A.2d 945, 955 (Pa. Super. Ct. 1992) (Superior Court of Pennsylvania noted that insurer was in privity to its insured).

Accordingly, the Court finds and rules that the third prerequisite for collateral estoppel has been met.

### 4. The Party Against Whom Collateral Estoppel Is Asserted Must Have Had a Full and Fair Opportunity to Litigate the Issue in Question in The Prior Action

Lastly, Cemex argues that the fourth prerequisite for collateral estoppel has not been met because "Cemex and IRI have never been provided a full and fair opportunity to litigate their property damage claim and should not be denied its opportunity to litigate the issue of Cemex's relative liability with ICE and Minserco for the dragline accident." Cemex's Br. at 8-9.

The Court notes that although Minserco was not a party in the *Carcaise* action, Minserco is likewise not a party to Cemex's action against ICE in the case *sub judice.* Instead, ICE has filed a separate third-party action against Minserco for indemnification. Apparently,

Cemex elected not to bring suit against Minserco. As such, Minserco is not a defendant as against Cemex and cannot be held liable directly to Cemex. *See Spring City Corp. v. American Buildings Co.*, 193 F.3d 165, 169 (3d Cir. 1999) (a third-party defendant joined under Rule 14(a) "does not become a defendant as against the original plaintiff").

As between Cemex and ICE, the identical legal theories are at issue in the instant case that were available and at issue in the *Carcaise* action. "That is, the identical issues of Cemex's same active and passive/secondary liability for the cause of the dragline accident are present. Cemex's passive/secondary liability derived from the Stripping Contract between Cemex's predecessor and Minserco." Reply Br. at 2-3.

Accordingly, the Court finds that the fourth prerequisite for collateral estoppel has been met.

For all these reasons, the Court finds that Cemex's claims against ICE are barred by the doctrine of collateral estoppel.

B.     *Doctrine of Res Judicata*

The Pennsylvania Supreme Court has explained res judicata as follows:

> Res judicata, or claim preclusion, is a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. Res judicata applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action.

*R/S Financial Corp. v. Kovalchick*, 716 A.2d 1228, 1230 (Pa. 1998) (noting that the "purposes of the rule are the protection of the litigant from the dual burden of relitigating an issue with the same party or its privy and the promotion of judicial economy through prevention of needless litigation.").

Traditionally, under Pennsylvania law, four factors must be present before the application of res judicata is appropriate: (i) identity of the issues or things sued upon; (ii) identity of the cause of action; (iii) identity of the persons and parties to the action; and (iv) identity of the quality or capacity of the parties suing or sued. *Safeguard Mutual Ins. Co. v. Williams*, 345 A.2d 664 (Pa. 1975).

      1.    <u>Identity of the Issues of Things Sued Upon</u>

Where the same event or occurrence underlies both actions, the first requirement is met. *Gregory v. Chehi*, 843 F.3d 111, 117 (3d Cir. 1987). Without doubt, a single event, the dragline accident of September 24, 1999, gives rise to both the *Carcaise* personal injury action and the property damage claim by Cemex. Therefore, the Court finds and rules that the first requirement for res judicata is met.

      2.    <u>Identity of the Cause of Action</u>

Pennsylvania courts have instructed that causes of action are identical when the "subject matter" and the "ultimate issues" are the same in both the "old and new proceedings." *Maranc v. Workers' Comp. Appeal Bd. (Bienenfeld)*, 751 A.2d 1196, 1999 (Pa. Commw. Ct. 2000). A "cause of action" or "claim" is to be defined "broadly in transactional terms,

regardless of the number of substantive theories advanced in the multiple suits by the plaintiff." *Gregory,* 843 F.2d at 117.   A single cause of action may consist of claims under different legal grounds. *Id.*

Comment c to section 24 of the Restatement (Second) of Judgments instructs that multiple claims do not arise solely because different legal theories arise; the transaction remains "unitary" although the different legal theories call for "different measures of liability or different kinds of relief."

In the instant case, the essence of Cemex's negligence and breach of contract claims is that the dragline accident was allegedly caused by ICE's failure to re-install sufficient ballast in the dragline upon reassembly.  (Complaint, at ¶¶ 18, 19, 23, 24, and 25).  Similarly, in its Third Party Complaint in *Carcaise*, Cemex alleged that ICE acted carelessly, recklessly and negligently in failing to properly ballast the dragline.  Thus, the Court finds and rules that Cemex has but one cause of action for the damages relating to the dragline accident.

The Court finds and rules that Cemex's claim for lack of sufficient ballast was litigated and decided in the *Carcaise* suit.   Further, the claims asserted by Cemex in the personal injury case and the instant property damage case are indivisible and, thus, satisfy the second requirement for res judicata.

3.    Identity of the Persons and Parties to the Action

The Court has found that Cemex is named in both lawsuits (although according to Cemex only nominally in the instant property damage action), both lawsuits assert that ICE breached its 1993 Contract by allegedly failing to properly disassemble, assemble, transport,

12

and erect the dragline, and both lawsuits assert the "same facts"- that the accident happened due to inadequate ballasting of the dragline. (*See* supra and discussion of third prerequisite for collateral estoppel.)

Thus, the Court finds that the third requirement for res judicata has been met.

4.       Identity of the Quality or Capacity of the Parties Suing or Sued

This last requirement requires little discussion. In *Carcaise,* Cemex was a third-party plaintiff in a third-party action against ICE. In the present case, Cemex is the original plaintiff in an independent action against ICE. In both cases, ICE and ICE alone, has defended Cemex's identical claims. Accordingly, the Court finds and rules that the capacities of the parties are identical in both lawsuits and, therefore, the fourth requirement for res judicata has been met.

For all these reasons, the Court finds that Cemex's claims against ICE are also barred by the doctrine of res judicata.

## CONCLUSION

For all the foregoing reasons, the Court concludes that the four prerequisites for collateral estoppel and/or res judicata have been met and therefore will grant the Supplemental Motion for Summary Judgment filed by ICE.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CEMEX, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 02: 02cv1240 |
| | ) |
| INDUSTRIAL CONTRACTING AND | ) |
| ERECTING, INC., | ) |
| | ) |
| Defendant/ Third Party | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MINSERCO, INC., | ) |
| | ) |
| Third Party Defendant. | ) |

**ORDER OF COURT**

AND NOW, this 26th day of June, 2006, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that the Supplemental Motion for Summary Judgment filed by Industrial Contracting and Erecting, Inc. is **GRANTED**.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:     Jeffrey M. Olszewski, Esquire
Cipriani & Werner
Email: jolszewski@c-wlaw.com

Richard D. Gable, Jr., Esquire
Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C.
Email: rgable@gibbonslaw.com

Francis X. McTiernan, Jr., Esquire
Wayman, Irvin & McAuley
Email: Fmctiernan@waymanlaw.com

Jeffrey A. Kubay, Esquire
Wayman, Irvin & McAuley
Email: jkubay@waymanlaw.com

James F. Israel, Esquire
Gaca, Matis, Baum & Rizza
Email: jisrael@gaca.com